# Illinois Official Reports

## Appellate Court

---

**Corah v. The Bruss Co., 2017 IL App (1st) 161030**

---

| | |
|---|---|
| Appellate Court Caption | JOSEPH CORAH, Plaintiff-Appellant, v. THE BRUSS COMPANY, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-16-1030 |
| Filed | March 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2012-L-003916; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Frank J. Andreou, of Andreou & Casson, Ltd., of Chicago, for appellant.<br><br>Chad W. Moeller and Sonya Rosenberg, of Neal Gerber & Eisenberg LLP, of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1     This appeal arises from the trial court's order granting summary judgment on plaintiff Joseph Corah's whistleblower claim to defendant The Bruss Company, an affiliate of Tyson Foods (Tyson). On appeal, plaintiff contends that the trial court erroneously granted defendant's motion for summary judgment because defendant instructed plaintiff to participate in an activity that directly violated an injured employee's rights to benefits under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2012)). In addition, plaintiff contends that the trial court erred in barring plaintiff from claiming emotional distress and punitive damages pursuant to the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2012)).

¶ 2                                    BACKGROUND

¶ 3     We recite only those facts necessary to understand the issues raised on appeal. This case arises from plaintiff's termination by defendant for allegedly refusing to participate in a record falsification stemming from employee Yvette Albea's accident. In April 2012, plaintiff commenced this action alleging that his termination from defendant's employ violated section 20 of the Whistleblower Act. 740 ILCS 174/20 (West 2012). Specifically, plaintiff argued that his termination was a direct result of his refusal to file a false accident investigation report (AIR), which would have been used as a basis for Albea's claim for benefits pursuant to the Workers' Compensation Act.

¶ 4     Depositions and affidavits submitted during discovery revealed the following. Plaintiff testified that defendant employed him in February 2010 as the bone-in-steak production supervisor, reporting to plant superintendant Darwin Hanson. Plaintiff's safety-related responsibilities consisted of monthly staff trainings, safety committee discussions about potential hazards, and weekly plant walk-throughs. If a workplace injury occurred, the supervisor of the department would investigate the incident and complete an AIR. The AIR contained a section referred to as the "Five Whys," which consisted of a series of why questions that a supervisor would ask in succession to get to the root cause of an injury or illness. Defendant believed a copy of the AIR was kept in-house and additional reports would be submitted to corporate, the insurance company, and the Occupational Safety and Health Administration (OSHA).

¶ 5     On September 6, 2010, Albea, a food handler under plaintiff's supervision, qualified as a higher-paid butcher on the band saw. Albea initially performed well, but eventually her speed and efficiency diminished as she began to experience lightheadedness and diaphoresis, causing her glasses to fog up. Plaintiff repeatedly voiced his concerns to Hanson about Albea's situation, and on September 29, 2010, plaintiff disqualified Albea. But after she allegedly threatened to file a union grievance, against plaintiff's strong objection, Hanson and plant superintendent Herman Ochoa allowed Albea to return to the band saw. Shortly thereafter, she sustained a laceration of the top of her right, middle finger. Following an investigation of the incident, plaintiff concluded that the root cause of Albea's injury was Ochoa and Hanson's carelessness in putting Albea back on the band saw. When plaintiff met with Hanson, Ochoa, and Bob Morisette, defendant's human resource manager, they all concluded that plaintiff's explanation was not the root cause of Albea's injury. Thus, plaintiff was instructed to redo the AIR to put "the fault on [Albea] versus the fault on poor leadership and choices of upper management." Plaintiff refused and was terminated for insubordination.

¶ 6        Following his termination, plaintiff spoke to Albea several times over the telephone. She allegedly told plaintiff that defendant instructed Albea to report the accident occurred outside the workplace. Plaintiff advised Albea that defendant violated her rights by failing to give her a choice in her medical care immediately following the accident when Ieon Bhairoo, another production supervisor, took Albea to the immediate care clinic instead of the hospital emergency room. Plaintiff, however, did not know if defendant refused to pay Albea's medical bills, challenged whether she was injured at work, or deterred her from seeking workers' compensation benefits.

¶ 7        Hanson testified that after hearing plaintiff's concerns, he decided to pull Albea off the band saw for a couple of days and suggested she consult with a doctor. Albea was upset, but Hanson explained it was a temporary decision. When Albea communicated that she was feeling better, Hanson consulted with Morisette and they agreed to put her back on the band saw. After Albea's injury, Hanson instructed plaintiff to complete the "Five Whys" portion of the AIR to determine the "root cause" of Albea's accident. Hanson, however, "did not ask [plaintiff] to change or delete anything or leave anything out."

¶ 8        Ochoa further testified that the purpose of the "Five Whys" portion of the AIR was to prevent the same accident from happening again. For instance, Ochoa wanted to know how Albea was standing and what position her hands were in. Ochoa terminated plaintiff because he "outright refused" to put this type of information in the AIR, even though Ochoa was going to allow plaintiff's typewritten concerns regarding management to be included. Morisette reiterated Ochoa's concerns and testified that the incident was not video recorded because Albea was standing in a blind spot. Thereafter, Bhairoo investigated Albea's injury and completed the AIR to defendant's specifications. He noted that Albea was cutting steak from a short loin when a piece jerked and the blade cut her finger.

¶ 9        Defendant's safety manager Lorrie Baker attested that she rejected plaintiff's AIR because plaintiff did not complete the "Five Whys" portion by identifying the root cause of Albea's injury. Specifically, Baker "wanted to know how and why Ms. Albea's finger made contact with the saw blade." AIRs were internal documents that were not submitted to OSHA or any other governmental agency. Defendant separately maintained an OSHA Form 300 to record all work place injuries and a separate workers' compensation report. Baker personally prepared the workers' compensation report for Albea's injury.

¶ 10       Jamie Bolinger, Tyson's workers' compensation administrator, attested that in processing an employee's injury he had access to the AIR report, but AIRs were not submitted to a state workers' compensation commission. Tyson and its affiliates were self-insured in the workers' compensation area and paid out claims directly from their own funds. Defendant stipulated that Albea was injured in the workplace and Bolinger approved Albea's application for workers' compensation benefits without objection. Albea never litigated any claim through the Illinois Workers' Compensation Commission because there was no dispute that she was entitled to benefits. Albea also testified that her injury was work-related and she did not recall defendant trying to interfere with workers' compensation benefits.

¶ 11       In April 2014, defendant filed a motion for summary judgment arguing plaintiff failed to demonstrate that he refused to participate in any activity that would have resulted in a violation of any state or federal law, rule, or regulation required to prevail under the Whistleblower Act. Further, plaintiff failed to establish a causal link between his alleged protected activity and his termination. After oral arguments, the trial court allowed plaintiff to file a supplemental report

with citation and evidence to any federal or state law, rule, or regulation that would have been violated with his alleged refusal to complete the "Five Whys" portion of the AIR. Thereafter, plaintiff cited to several statutes under the Workers' Compensation Act (820 ILCS 305/4(h), 6(b), 25.5 (West 2012)), as well as violations under OSHA for filing a false statement regarding a work-related injury. On September 10, 2014, the trial court granted defendant's motion for summary judgment in regards to plaintiff's claims for emotional distress and punitive damages but granted leave for plaintiff to file an amended complaint to comport with proofs. Defendant then moved to strike the first amended complaint. On December 18, 2014, the trial court denied defendant's request, but ordered plaintiff to file a second amended complaint with no references to violations of OSHA. Plaintiff complied and included a claim for common-law retaliatory discharge.

¶ 12    Thus, in October 2015, defendant filed a second motion for summary judgment. On April 7, 2016, after briefing and a hearing, the trial court granted summary judgment regarding the whistleblower claim holding that plaintiff did not identify how or what particular statute his conduct would have violated, other than the Workers' Compensation Act in general. The court, however, allowed plaintiff's common-law retaliatory discharge claim to proceed. On March 8, 2016, pursuant to section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009 (West 2012)), plaintiff voluntarily dismissed his second amended complaint.[1] Thereafter, plaintiff filed a timely notice of appeal as to the trial court's April 7, 2016, order granting summary judgment to defendant on the whistleblower claim. See *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503 (1997) ("[t]he order of voluntary dismissal, because it disposed of all matters pending before the circuit court, rendered all orders which were final in nature, but which were not previously appealable, immediately final and appealable").

¶ 13                                    ANALYSIS

¶ 14    Plaintiff contends that the trial court erroneously granted defendant's motion for summary judgment because defendant asked plaintiff to falsify the AIR which directly violated Albea's rights to benefits under the Workers' Compensation Act. Summary judgment is proper where the pleadings, admissions, depositions, and affidavits demonstrate there is no genuine issue as to any material fact so that the movant is entitled to judgment as a matter of law. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008); 735 ILCS 5/2-1005 (West 2012). In determining whether a genuine issue of material fact exists, the court must consider such items strictly against the movant and liberally in favor of its opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review the trial court's order granting summary judgment *de novo*. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009).

¶ 15    In order to prevail on a claim under section 20 of the Whistleblower Act, a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) his employer retaliated against him because of the refusal. 740 ILCS 174/20 (West 2012); *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 48. "This court has held that the language of section 20 is unambiguous and that a 'plaintiff must actually refuse to participate' in an activity that would violate a law or regulation." *Lucas v. County of Cook*, 2013 IL App (1st) 113052, ¶ 25 (quoting *Sardiga v.*

_____

[1]In June 2016, plaintiff refiled his common law retaliatory claim which is pending below and not at issue on this appeal.

*Northern Trust Co.*, 409 Ill. App. 3d 56, 62 (2011)). Plaintiff bears the burden of establishing his claim under the Whistleblower Act. *Sardiga*, 409 Ill. App. 3d at 64-65.

¶ 16     Here, plaintiff suggests that defendant violated section 6(b) of the Workers' Compensation Act by asking plaintiff to file a false AIR report. 820 ILCS 305/6(b) (West 2012) ("[e]very employer *** shall maintain accurate records of work-related deaths, injuries and illness"). While we appreciate that plaintiff's interpretation of Albea's accident was caused by plaintiff's superiors allowing Albea to remain qualified on the band saw, this does not mean that defendant instructed plaintiff to prepare a false AIR of Albea's accident. The completed AIR, which was prepared by Bhairoo after plaintiff refused, stated that Albea "was cutting [the] club end on a short loin when [the] blade caught the glove [and] pulled the right middle finger into the saw blade." This explanation was the root cause of Albea's injury and, thus, did not result in a fraudulent AIR. In making our determination, we find *Lucas* dispositive.

¶ 17     In *Lucas*, the gynecologist plaintiff filed a whistleblower claim against the defendant after she was terminated for refusing to treat male patients with sexually transmitted diseases (STDs) or attend training to treat male patients with STDs. *Lucas*, 2013 IL App (1st) 113052, ¶ 1. Specifically, the plaintiff alleged that the defendant violated title 68, section 1285.240 of the Administrative Code (68 Ill. Adm. Code 1285.240 (2005)) " 'by requiring [the plaintiff] to perform services as a physician without adequate training' and for offering her inadequate training." *Lucas*, 2013 IL App (1st) 113052, ¶ 7. The reviewing court determined that the plaintiff's reliance on this section was misplaced because it "lists standards that the Medical Disciplinary Board considers when disciplining physicians licensed under the Medical Practice Act of 1987." *Id.* ¶ 28. The section did not prohibit the defendant's request that the plaintiff "treat male patients or attend training to treat male patients." *Id.* Thus, since the plaintiff failed to establish that the defendant asked her to participate in an illegal activity, summary judgment was appropriate. *Id.* ¶ 30. See *Ulm v. Memorial Medical Center*, 2012 IL App (4th) 110421, ¶ 36 (the trial court did not err by granting the defendant summary judgment on the plaintiff's whistleblower claim when the plaintiff's refusal to sign a certification accompanying a subpoenaed medical record did not violate any law "even assuming [the] defendant fired [the plaintiff] in retaliation for so refusing"); *Sardiga*, 409 Ill. App. 3d at 64 (the evidence in the record failed to establish that the plaintiff's refusal to participate in a "poor business practice" was sufficient to satisfy the requirements of the Whistleblower Act).

¶ 18     Further, we find plaintiff's sole reliance on *Young* misplaced. In *Young*, the plaintiff nurse filed a whistleblower claim against the defendant employer, a licensed long-term care facility, for terminating the plaintiff's employment after she refused to falsify residents' medication administration records at her superior's request. *Young*, 2015 IL App (1st) 131887, ¶¶ 3-7. The reviewing court observed that "[f]alsifying a patient's medical record with fabricated results of blood glucose tests would have warranted revocation of [the plaintiff's] license" under provisions of the Nurse Practice Act (225 ILCS 65/50-1 *et seq.* (West 2012)). *Young*, 2015 IL App (1st) 131887, ¶ 50. Therefore, the court concluded that the practice the defendant asked the plaintiff to engage in was illegal. In the instant case, as stated above, defendant did not ask plaintiff to falsify the AIR but merely to include the technical cause of Albea's accident. In addition, defendant's safety manager Baker established the AIR was an internal document that would not have been submitted to any government agency. And in any event, testimony from plaintiff's superiors revealed that defendant was going to allow plaintiff's typewritten notes

into the AIR voicing plaintiff's concerns about Albea being permitted to remain qualified on the band saw.

¶ 19    Contrary to plaintiff's assertion, the record demonstrates that defendant did not interfere with Albea's rights to procure benefits under section 4(h) of the Workers' Compensation Act. 820 ILCS 305/4(h) (West 2012) ("[i]t shall be unlawful for any employer *** to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her"). Although plaintiff suggests that defendant asked Albea to report her injury occurred outside the workplace, this is unsupported by the record. Baker personally prepared the workers' compensation report for Albea's injury and Tyson administrator Bolinger approved Albea's application for workers' compensation benefits without any objection from defendant. Even plaintiff acknowledged that defendant never asked plaintiff to misstate where Albea's injury occurred. Additionally, there is no evidence that defendant interfered with Albea seeking her preferred choice of medical treatment. Nor does Albea recall defendant interfering with her rights to workers' compensation benefits. Moreover, we fail to see how defendant's alleged treatment of Albea after plaintiff's termination is relevant to whether or not the activity defendant wanted plaintiff to engage in, i.e., redoing the "Five Whys" portion of the AIR, violated any law, rule, or regulation. Accordingly, plaintiff fails to establish that defendant instructed plaintiff to engage in unlawful behavior or interfered with Albea's rights under the Workers' Compensation Act. See 820 ILCS 305/25.5 (West 2012) (making it unlawful for any employer to interfere with a worker's rights to benefits). Accordingly, we need not consider whether defendant retaliated against plaintiff. See also *Michael v. Precision Alliance Group*, *LLC*, 2014 IL 117376, ¶ 32 (the supreme court noted the burden rests solely on the plaintiff to prove that the cause of the discharge was retaliatory).

¶ 20    Plaintiff next contends that the trial court erred in dismissing his claims for emotional distress and punitive damages when the court ruled on defendant's first motion for summary judgment on September 10, 2014. Likewise, plaintiff suggests that the trial court erred in its December 18, 2014, order instructing plaintiff to remove any references to OSHA from his second amended complaint. Defendant, however, argues that we lack jurisdiction to review these additional orders. Illinois Supreme Court Rule 303(b)(2) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. June 4, 2008). Unless there is a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and is obliged to dismiss the appeal. *Calumet School District No. 132 v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 153034WC, ¶ 37. A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). Thus, "[t]he purpose of the notice of appeal is to inform the prevailing party that the other party seeks review of the trial court's decision." (Internal quotation marks omitted.) *Id.*

¶ 21    In the case *sub judice*, plaintiff did not include the trial court's September 10, 2014, order or the December 18, 2014, order in his notice of appeal. Therefore, defendant was only put on notice that plaintiff would be seeking review on the trial court's April 7, 2016, order granting defendant summary judgment on the whistleblower claim. Therefore, we find this court lacks jurisdiction to consider the dismissal of the claims involving emotional distress and punitive damages. See *Alpha Gamma Rho Alumni v. People ex rel. Boylan*, 322 Ill. App. 3d 310, 313

(2001) ("[w]hen an appeal is taken from \*\*\* a specified judgment, the appellate court acquires no jurisdiction to review other judgments or parts" of judgments not specified or fairly inferred from the notice). As to the OSHA claim, however, it was arguably inferred from the notice and we find defendant suffers no prejudice for us to address it here. See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 22 (we will liberally construe a notice of appeal " 'if the notice, when considered as a whole, fairly and adequately sets out the judgment complained of and the relief sought so that the successful party is advised of the nature of the appeal' " (quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433-34 (1979))).

¶ 22   In plaintiff's first amended complaint, plaintiff cites to several provisions under OSHA, arguing that "defendant attempted to force plaintiff to create a false account of a workplace injury by forcing plaintiff to recreate the facts and circumstances surrounding Ms. Albea's injuries in a manner that was favorable to defendant and would have provided false information to OSHA if an investigation occurred." But plaintiff fails to explain how defendant instructing plaintiff to rewrite his AIR to identify how Albea's finger made contact with the band saw blade, *i.e.*, the root cause of Albea's injury, equates to defendant asking plaintiff to file a false report under OSHA that would have impeded an investigation. The record also suggests that AIRs were internal documents not submitted to OSHA as defendant maintained a separate OSHA Form 300 to record all work-related injuries. In addition, plaintiff fails to further develop his argument on appeal, and we need not consider this matter further. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Heupel v. Jenkins*, 379 Ill. App. 3d 893, 900 (2008) (failure to assert a well-reasoned argument supported by legal authority results in waiver). Consequently, as the record presents no genuine issue of material fact, defendant was entitled to summary judgment as a matter of law.

¶ 23                                CONCLUSION
¶ 24   Based on the foregoing, we affirm the judgment of the circuit court of Cook County.

¶ 25   Affirmed.