In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 18-2673

ANTHONY WALKER,

*Plaintiff-Appellant,*

*v.*

INGERSOLL CUTTING TOOL COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Western Division
No. 16 C 50040 — **Frederick J. Kapala**, *Judge.*

_____

ARGUED JANUARY 15, 2019 — DECIDED FEBRUARY 20, 2019

_____

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* After Anthony Walker was involved in a physical altercation with another employee of Ingersoll Cutting Tools, the company discharged him. He sued Ingersoll, alleging racial discrimination under Title VII and retaliatory discharge under Illinois law. The district court granted summary judgment for Ingersoll on all claims. On appeal, Walker abandoned his Title VII racial discrimination claims. Because Walker did not identify evidence of a causal

connection between his termination and conduct protected by
Illinois law, we affirm the district court's grant of summary
judgment.

## I. BACKGROUND

Anthony Walker has worked as a machinist at Ingersoll
Cutting Tools since October 2008. Ingersoll asserts that
Walker has a history of conflict with coworkers. That appears
to be largely undisputed by Walker, but the facts relevant for
the present appeal involve an incident on October 21, 2014.
On that day, Walker was listening and dancing to music while
working at his machine. Another coworker, Todd Rafferty,
told Walker to mute the radio. The parties dispute the severity
of the confrontation. Walker alleges that he was physically as-
saulted—by which he means he was bumped—and threat-
ened with additional violence. Ingersoll questions whether
physical contact or threats of violence occurred. But everyone
acknowledges that Rafferty yelled at Walker to turn the music
off, and then the two men engaged in a shouting match.

The unit supervisor, Daniel Thompson, separated the two
men, calmed them down, and questioned them. Afterwards,
Walker returned to work and Rafferty went home for the day.
The two men worked without incident on October 22. On Oc-
tober 23, Walker met with Thompson and another supervisor
to discuss the incident. Walker asked Thompson to discipline
Rafferty (perhaps by a mandatory leave of absence). It is un-
clear whether Thompson directly refused to do so. But Walker
was frustrated with the inaction by Ingersoll. Walker told
Thompson that he no longer trusted or respected him because
he had not disciplined Rafferty for the assault (and because of
Walker's perception that Thompson inadequately responded

to workplace disputes in the past). Walker also suggested that the conflict with Rafferty was affecting his physical wellbeing.

The supervisors suspended Walker with pay while the company determined how to proceed. Accordingly, October 23, 2014, was Walker's last day of work at Ingersoll.

On October 26, 2014, Thompson told his supervisor, Scott Tilton, that "I don't see now how [Walker] can remain part of [the unit] any longer." Thompson cited Walker's admitted dislike towards his coworkers and his disrespect towards his supervisor. Thompson and Tilton met on October 27 and decided to terminate Walker's employment. They informed Ingersoll's human resources manager by email the same day. She confirmed receipt of the email on October 28 and began the termination process.

On October 29—one day after Ingersoll had concluded that Walker would be fired—Walker's attorney informed the company that he intended to sue for discrimination and retaliation unless Ingersoll brought him back to work. The same day, Walker reported the alleged physical assault by Rafferty to the local police department. The local prosecutor ultimately declined to bring charges. Ingersoll formally terminated Walker's employment on November 18, 2014.

## II. ANALYSIS

During oral argument, Walker withdrew his Title VII claims of discrimination and retaliation. He did not expressly withdraw his claim of Illinois Worker's Compensation Act retaliation. But Walker did not mention that claim during oral argument or in his opening brief (Walker declined to file a reply brief). Thus, Walker waived any challenge to the district court's judgment on that claim. *Puffer v. Allstate Ins. Co.*, 675

F.3d 709, 718 (7th Cir. 2012). The sole remaining issue, then, is whether the district court properly granted summary judgment on Walker's claim that Ingersoll fired him for reporting a crime. We review the district court's summary judgment decision *de novo* and draw all reasonable inferences in Walker's favor. *Burritt v. Ditlefsen*, 807 F.3d 239, 248 (7th Cir. 2015).

Walker first argues that, upon granting judgment on his federal claims, the district court should have relinquished jurisdiction over his state law claims. That argument rests on a misapprehension of how federal supplemental jurisdiction works. If a district court possesses original jurisdiction over one claim, 28 U.S.C. § 1367(a) permits that court to also exercise supplemental jurisdiction over any claim that is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." If the district court dismisses the federal claims on any basis other than for lack of jurisdiction, the court has discretion regarding whether to maintain supplemental jurisdiction over the state law claims. *Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). Here, the district court did not dismiss the federal claims for lack of jurisdiction. And there was no abuse of discretion in the district court's decision to resolve the state law retaliation claims on the merits.

We turn now to those merits. Under Illinois law, a plaintiff may sue for retaliatory discharge if "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009).

Walker's claim fails on the second element. "The requirement that the discharge be in retaliation for plaintiff's

activities requires that a plaintiff establish a causal relationship between the employee's activities and the discharge." *Michael v. Precision All. Grp., LLC*, 2014 IL 117376, ¶ 31. And, to prove causality, the plaintiff must show "more than a sequential connection." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994). Rather, the plaintiff has the burden of "affirmatively show[ing] that the discharge was primarily in retaliation for his exercise of a protected right." *Id.*

Ingersoll made the decision to discharge Walker on October 27; Walker filed his police report on October 29. He makes no attempt to undermine or question the company's evidence regarding when it decided to terminate his employment. Walker thus cannot show even a sequential connection between reporting the alleged crime and his discharge.

Undeterred, Walker argues that the protected conduct was his reporting of the incident to Ingersoll, not his police report. Walker cites no authority to support his assertion that Illinois has articulated a clear public policy mandate against firing an employee who was involved in a workplace dispute. It would be difficult to square such a conclusion with the "general rule that an 'at-will' employment is terminable at any time for any or no cause." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981). It's true that Walker now emphasizes that the dispute involved a "bump." But he does not identify any evidence which suggests that his complaints to Ingersoll focused on the physical contact specifically or alleged that a crime occurred. And, regardless, Walker hasn't pointed us to support for the idea that Illinois has established a clear public policy against firing an employee who was bumped during a shouting match with a coworker. We are deeply skeptical.

Even assuming that Walker has identified protected conduct, this alternative theory still fails to satisfy the causality element. There is a sequential connection between the altercation and Walker's discharge. But Walker has not provided evidence affirmatively showing that Ingersoll fired him because he accused Rafferty of assault. The company asserts that it fired Walker because of his history of workplace conflict and his stated distrust and disrespect for his coworkers and supervisor. When a worker is fired for "impugn[ing] the company's integrity," the discharge does not violate public policy. *Palmateer*, 421 N.E.2d at 879 (citing *Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 456 (Iowa 1978)). Walker falls short of identifying a material issue of fact on the causality element of his state law retaliation claim. The district court properly granted judgment for Ingersoll.

## III. CONCLUSION

Walker waived his challenge to the district court's judgment on his Title VII and Illinois Worker's Compensation Act claims. Regarding the remaining claim, Walker simply failed to support his allegation that he was fired for reporting a crime.

AFFIRMED.