NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 5, 2022[*]
Decided January 6, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-1641

| | |
|---|---|
| DONALD E. WEAVER, JR., | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of |
| | Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:19-cv-00799-TWP-DLP |
| CORIZON HEALTH, INC., et al., | |
| *Defendants-Appellees*. | Tanya Walton Pratt, |
| | *Chief Judge*. |

**O R D E R**

Donald Weaver, an Indiana inmate, asserts that two prison doctors and the Indiana Department of Correction's healthcare contractors violated his Eighth Amendment rights by failing for four years to provide him with adequate testing and treatment for throat problems that ultimately required surgery. *See* 42 U.S.C. § 1983.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Because Weaver's claims against the doctors are untimely, and there is no basis for the contractors' liability, we affirm the entry of summary judgment for all defendants.

Corizon Health, Inc., was the healthcare contractor for the Department of Correction until April 2017, when Wexford of Indiana, LLC, took over. We recount the facts about Weaver's treatment in the light most favorable to him. *See Thomas v. Martija*, 991 F.3d 763, 767 (7th Cir. 2021).

In November 2013, while incarcerated at the Wabash Valley Correctional Facility, Weaver began experiencing dizziness, difficulty breathing, fainting, swelling in his throat, chest pains, stones in his mouth (allegedly), and coating and lumps on his tongue. Weaver went to the infirmary multiple times and reported these symptoms to doctors Frances Dwyer and Naveen Rajoli. He made many written and oral requests for treatment and asked repeatedly to see a specialist. Although both doctors prescribed medications and performed various tests, neither sent Weaver to a specialist or accurately diagnosed his conditions. Dr. Dwyer last examined Weaver in April 2014, and Dr. Rajoli in April 2016.

Weaver was transferred to Pendleton Correctional Facility in March 2017. His symptoms persisted, and he saw an ear, nose, and throat specialist, who diagnosed ptotic epiglottis, chronic tonsilitis, and dysphasia. Based on the specialist's recommendation, Weaver had throat surgery in 2018.

In February 2019, Weaver sued prison officials, doctors, and healthcare contractors at both the Wabash Valley and Pendleton facilities for constitutional and statutory violations related to his medical treatment. The district court severed the suit and limited this case to the events that occurred at Wabash Valley. It then screened the complaint and allowed Weaver to proceed on deliberate-indifference claims against doctors Dwyer and Rajoli; *Monell* claims against Corizon and Wexford; and, on a third-party-beneficiary theory, claims against Corizon and Wexford for breach of contract. (A claim against a third doctor, who was never served with process, is not at issue here.)

At the start of discovery, Weaver twice moved for the recruitment of counsel; he explained that he lacked knowledge of the subject matter at issue and that his facility was frequently on lockdown. The court denied the first motion because Weaver had not submitted the form containing the information it needed. In denying the subsequent motion, the court explained that the issues were straightforward and that Weaver had demonstrated competence to litigate at that stage.

The parties eventually filed cross-motions for summary judgment, and the court granted the defendants' motions. First, the court determined that Weaver's claims against Dr. Dwyer and Dr. Rajoli were untimely. With respect to Corizon, Weaver did not support his contention that it had a policy of failing to properly train its doctors. Further, he was not a third-party beneficiary to Corizon's contract with the Department of Correction, and therefore he could not sue for an alleged breach. Finally, the court concluded that Wexford could not be liable because it did not become the healthcare contractor for Indiana prisoners until after the events giving rise to this suit.

On appeal, Weaver challenges the entry of summary judgment, which we review de novo. *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019). He does not mention the *Monell* claim against Wexford or the breach-of-contract claims, so we do not address them. *See id.*

First, Weaver challenges the ruling on his claims that the two doctors at Wabash Valley, with deliberate indifference to his serious health concerns, failed to accurately diagnose and treat his condition. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). He does not squarely address the timeliness of these claims, but he refers to having a "continuing injury," which we construe as a challenge to the district court's determination of when his claims accrued.

Accepting that Weaver is still experiencing harm from the doctors' actions before February 2017, as he asserts, his claims are still untimely. The limitations period for Weaver's claims is two years. *See* IND. CODE § 34-11-2-4; *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (suits under § 1983 borrow state statute of limitations for personal-injury claims). A claim generally begins to accrue when the plaintiff knows of his physical injury and its cause. *See Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013). But where there is a continuing violation, as here, the accrual of a claim is delayed. *See id* at 770. In that case, the clock begins to run "when the course of illegal conduct is complete," even if the harm persists. *See United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350 (7th Cir. 2019). Once the doctors were no longer responsible for Weaver's treatment, the limitations period began to run. *See Devbrow*, 705 F.3d at 770. Dr. Dwyer and Dr. Rajoli last attended to Weaver in April 2014 and 2016, respectively, but Weaver did not file his complaint until February 2019—well beyond the statute of limitations.

Weaver also contends that a reasonable jury could find that Corizon had a policy or practice of not properly training its doctors. There is no respondeat superior liability under § 1983—which answers Weaver's suggestion that Corizon should be liable for harms its employee-doctors caused—but Weaver could proceed if he had evidence that Corizon itself caused a constitutional violation. *See Monell v. Dep't of Soc. Servs*, 436 U.S.

658 (1978). Assuming failure to train is a valid theory under § 1983, Weaver would have to show that Corizon knew its doctors to be providing insufficient treatment and, by failing to train them, demonstrated deliberate indifference to that known risk. *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). But—to the extent this claim is timely—the record contains no evidence of Corizon's knowledge of how the two Wabash Valley doctors were treating (or mistreating) Weaver. Therefore, summary judgment for Corizon was appropriate.

Finally, Weaver argues that the district court abused its discretion by refusing to recruit a pro bono attorney for him. When asked to take this step, the district court must assess whether the indigent plaintiff reasonably attempted to obtain counsel, and, if so, whether he appears competent to litigate the case on his own, considering its difficulty. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). And to demonstrate a reversible error on appeal, the movant must also show prejudice. *See id.* at 659.

Here, the district court determined that Weaver demonstrated reasonable attempts to obtain his own counsel but that he was competent to litigate the case on his own because "[t]he overall factual allegations and legal claims regarding the defendants are straightforward" and Weaver "has a GED and has no medical or mental health issues that affect his ability to litigate these claims." Thus, the district court applied the correct legal standard and used the facts in the record to make a reasonable decision. *Id.* at 658; *see also Perry v. Sims*, 990 F.3d 505, 513 (7th Cir. 2021). And Weaver does not attempt to explain how having a lawyer could have affected the result, which is largely attributable to the timing of his claims.

AFFIRMED