(No. 107317.—

MARK TURNER, Appellant, v. MEMORIAL MEDI-
CAL CENTER, Appellee.

*Opinion filed June 18, 2009.*

John A. Baker, of Baker, Baker & Krajewski, LLC, of Springfield, for appellant.

John A. Kauerauf, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

Glenn A. Stanko, of Rawles, O'Byrne, Stanko, Kepley & Jefferson, P.C., of Champaign, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff, Mark Turner, brought a retaliatory discharge action in the circuit court of Sangamon County against defendant, Memorial Medical Center (Memorial). The circuit court dismissed plaintiff's first-amended complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)). A divided

panel of the appellate court upheld the dismissal. No. 4—07—0934 (unpublished order under Supreme Court Rule 23). We allowed plaintiff's petition for leave to appeal (210 Ill. 2d R. 315(a)), and now affirm the judgment of the appellate court.

## I. BACKGROUND

Plaintiff's first-amended complaint alleged as follows. Plaintiff is a trained and licensed respiratory therapist. Beginning in 1983, plaintiff was employed by Memorial, which is a community hospital. During his employment, plaintiff had consistently met legitimate employment expectations, and his employment evaluations consistently indicated excellent work performance.

In September 2006, the Joint Commission on Accreditation of Healthcare Organizations (hereinafter, Joint Commission) performed an on-site survey at Memorial. The Joint Commission is an independent, not-for-profit organization that establishes various health-care standards and evaluates an organization's compliance with those standards and other accreditation requirements. The purpose of the on-site survey was to determine whether Memorial would continue to receive Joint Commission accreditation. Memorial's failure to receive this accreditation would result in the loss of federal Medicare/Medicaid funding.

Memorial uses a computer charting program that allows medical professionals to electronically chart a patient's file. The Joint Commission standard is that such electronic charting be performed immediately after care is provided to a patient. However, Memorial's respiratory therapy department did not require immediate charting. Rather, Memorial required a respiratory therapist to chart patient care merely at some point during his or her shift.

On September 28, 2006, plaintiff was asked to speak with a Joint Commission surveyor. Also present at this

meeting was Memorial's vice-president of patient care services. During this meeting, plaintiff truthfully advised the surveyor of the discrepancy between the Joint Commission standard of immediate charting and Memorial's requirement of charting at some point during the shift. Plaintiff further advised the surveyor that Memorial's deviation from the Joint Commission standard was jeopardizing patient safety. Plaintiff alleged that as a result of his truthful statements to the Joint Commission surveyor, Memorial discharged plaintiff on October 4, 2006.

Plaintiff also alleged: "Illinois law clearly recognizes the rights of patients. The Medical Patient Rights Act [citation] recognizes Illinois public policy establishing '[t]he right of each patient to care consistent with sound nursing and medical practices.' " Plaintiff further alleged that Memorial's failure to immediately chart patient records "was not consistent with sound medical practices" and "jeopardized the safety of patients." According to the complaint, plaintiff's discharge "violated public policy that encourages employees to report actions that jeopardize patient health and safety." Plaintiff claimed damages in the form of lost wages.

On Memorial's motion, the circuit court dismissed plaintiff's complaint with prejudice pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)). Viewing the alleged facts in the light most favorable to plaintiff, the court found that the complaint was legally insufficient. The court concluded plaintiff failed to establish the existence of a public policy that a provision of law clearly mandated which Memorial allegedly violated by discharging plaintiff.

The appellate court affirmed, with one justice specially concurring. No. 4—07—0934 (unpublished order under Supreme Court Rule 23). This court allowed plaintiff's petition for leave to appeal. 210 Ill. 2d R.

315(a). We subsequently granted the Illinois Trial Lawyers Association leave to submit an *amicus curiae* brief in support of plaintiff. 155 Ill. 2d R. 345.

## II. ANALYSIS

A section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 2006)) attacks the legal sufficiency of a complaint. The motion does not raise affirmative defenses, but rather alleges only defects on the face of the complaint. The question presented by a section 2—615 motion to dismiss is whether the allegations of the complaint, when taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008); *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996). A court reviews *de novo* an order granting a section 2—615 motion to dismiss. *Napleton*, 229 Ill. 2d at 305; *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 392 (2008).

In the present case, plaintiff assigns error to the circuit court's dismissal of his complaint with prejudice. Plaintiff contends that Memorial discharged him in retaliation for advising the Joint Commission surveyor of the discrepancy between the Joint Commission standard of charting a patient's file immediately after care is provided and Memorial's requirement of charting at some point during the employee's shift. Plaintiff alleged in the complaint that his discharge violated public policy relating to "patient health and safety." Plaintiff contends

that the complaint sufficiently states a claim for retaliatory discharge.

### A. Common Law Retaliatory Discharge: Controlling Principles

In Illinois, "a noncontracted employee is one who serves at the employer's will, and the employer may discharge such an employee for any reason or no reason." *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994); accord *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505 (1991) (stating this court's adherence to rule that employer may discharge at-will employee for any or no reason); *Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 67 (1985) (stating "accepted general rule" that "in an employment at will there is no limitation on the right of an employer to discharge an employee").

However, an exception to this general rule of at-will employment arises where there has been a retaliatory discharge of the employee. *Price*, 109 Ill. 2d at 67. This court has recognized a limited and narrow cause of action for the tort of retaliatory discharge. *Fellhauer*, 142 Ill. 2d at 505, citing *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124 (1981); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172 (1978). To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy. *Fellhauer*, 142 Ill. 2d at 505; *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 529 (1985); *Palmateer*, 85 Ill. 2d at 134. Surveying many cases from across the country, this court in *Palmateer* discussed the meaning of "clearly mandated public policy":

"There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Cita-

tion.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer*, 85 Ill. 2d at 130.

Further, numerous decisions of this court have maintained the narrow scope of the retaliatory discharge action. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 19-20 (1998) (collecting cases). "The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy." *Barr*, 106 Ill. 2d at 525.

At the outset, we reject plaintiff's contention that whether the failure to perform immediate charting jeopardizes the public policy of "patient safety" is a question of fact that precludes dismissal of his complaint. Generally, the ascertainment of public policy is a question for the courts. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 318 (1996). Plaintiff misapprehends a basic procedural aspect of a common law retaliatory discharge action. It is widely recognized that the existence of a public policy, as well as the issue whether that policy is undermined by the employee's discharge, presents questions of law for the court to resolve.[1] See *Newby v. Wal-Mart Stores, Inc.*, 659 F. Supp. 879, 880-81 (C.D. Ill. 1987) (interpreting Illinois law); *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 282 (Iowa 2000) (collecting authorities); *Kanagy v. Fiesta*

---

[1]On the other hand, the element of retaliation, which involves causation and motive, is factual in nature and generally more suitable for resolution by the trier of fact. See *Vorpagel v. Maxell Corp. of America*, 333 Ill. App. 3d 51, 56 (2002) (causation); *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 596 (2000) (motive).

*Salons, Inc.*, 208 W. Va. 526, 529, 541 S.E.2d 616, 619 (2000) (stating that determination of existence of public policy in wrongful-discharge action is question of law); *Watson v. Peoples Security Life Insurance Co.*, 322 Md. 467, 478, 588 A.2d 760, 765 (1991) (same); *Mello v. Stop & Shop Cos.*, 402 Mass. 555, 561 n.7, 524 N.E.2d 105, 108 n.7 (1988) (same); 82 Am. Jur. 2d *Wrongful Discharge* §58, at 649 (2003) (same). We agree with this widely accepted proposition and so hold. Accordingly, the questions of whether "patient safety" is a clearly mandated public policy and, if so, whether plaintiff's discharge violated that policy are questions of law for the court.

Turning to the merits, plaintiff contends that Memorial, by discharging him in retaliation for reporting the alleged patient charting discrepancy, violated the clearly mandated public policy of "patient safety." Indeed, plaintiff asks us to "definitively declare that patient safety is a matter of public policy in the state of Illinois and that terminating an employee who speaks out in favor of patient safety violates that public policy." Plaintiff overlooks a basic substantive requirement of a common law retaliatory discharge action.

The tort of retaliatory discharge "seeks to achieve 'a proper balance *** among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out.' " *Fellhauer*, 142 Ill. 2d at 507, quoting *Palmateer*, 85 Ill. 2d at 129. In the absence of a clearly mandated public policy, "the employer retains the right to fire workers at will." *Palmateer*, 85 Ill. 2d at 130; accord *Fitzgerald*, 613 N.W.2d at 283. A broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment. *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265, 267 (Colo. App. 1984) (collecting cases). Indeed: "Any effort to evaluate the public policy exception with

generalized concepts of fairness and justice will result in an elimination of the at-will doctrine itself." *Fitzgerald*, 613 N.W.2d at 283.

Further, generalized expressions of public policy fail to provide essential notice to employers. The phrase "clearly mandated public policy" implies that the policy will be recognizable simply because it is clear. "An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." *Birthisel v. Tri-Cities Health Services Corp.*, 188 W. Va. 371, 377, 424 S.E.2d 606, 612 (1992); accord *Fitzgerald*, 613 N.W.2d at 282 (stating that requirement of "well-recognized and clear public policy" "helps ensure that employers have notice that their dismissal decisions will give rise to liability").

Accordingly, an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. However, unless an employee at will identifies a "specific" expression of public policy, the employee may be discharged with or without cause. *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980). For example, insufficient allegations of public policy include "right to marry" a coworker (*McCluskey v. Clark Oil & Refining Corp.*, 147 Ill. App. 3d 822, 825-26 (1986)); "product safety" (*Geary v. United States Steel Corp.*, 456 Pa. 171, 183, 319 A.2d 174, 180 (1974)); "promoting quality health care" (*Hrehorovich v. Harbor Hospital Center, Inc.*, 93 Md. App. 772, 796, 614 A.2d 1021, 1033 (1992)); and "the Hippocratic Oath" (*Pierce*, 84 N.J. at 76, 417 A.2d at 514). Unless the employee identifies a clear mandate of public policy that is violated by the employee's discharge, the complaint will not state a cause of action for retaliatory discharge. *Fellhauer*, 142 Ill. 2d at 510. Further, as the circuit court's decision was limited to the well-pled

allegations in the complaint, so our review of the circuit court's decision is likewise limited to those same allegations. See *Eisenbach v. Esformes*, 221 Ill. App. 3d 440, 443 (1991).

## B. Plaintiff's Complaint

In the present case, we must determine whether the complaint, on its face, contains sufficient allegations that plaintiff's discharge contravened some clear mandate of public policy. The complaint alleges only two such sources: the Joint Commission standards and the Medical Patient Rights Act (410 ILCS 50/0.01 *et seq.* (West 2006)). Because plaintiff's complaint fails to set forth a specific public policy, much less a *clearly mandated public policy*, we conclude that it does not support a cause of action for retaliatory discharge. See *Fellhauer*, 142 Ill. 2d at 510.

The complaint contains the following specific allegations concerning the Joint Commission standards. Plaintiff generally described the function and mission of the Joint Commission. Plaintiff alleged that the Joint Commission's "role is recognized by the federal government as an important component in assuring patient safety." Plaintiff then alleged that the Joint Commission "has certain standards and criteria" pertaining to electronic patient charting. "One of the standards requires that [electronic] charting be done immediately after care is provided to a patient." Plaintiff further alleged: "The rationale behind immediate [electronic] charting is to enhance patient care and safety."

The circuit court found that plaintiff "failed to establish the existence of a public policy clearly mandated by a provision of law which is violated when a concern is voiced to a [Joint Commission] surveyor about the time during a given work shift when patient care is charted. No Illinois law or administrative regulation directly requires immediate bedside charting of patient care."

However, the circuit court further found that Joint Commission "standards are not Illinois law and thus cannot be said to be representative of the public policy of the State of Illinois." A careful reading of plaintiff's complaint would have obviated the necessity of making such a finding. Regardless of whether, as plaintiff's supporting *amicus* contends, the Joint Commission "is the functional equivalent of [a] government regulator," plaintiff's complaint fails to recite or even refer to a specific Joint Commission standard in support of his allegation. This allegation fails to set forth a specific public policy. Therefore, we conclude that it does not support a cause of action for retaliatory discharge. See *Eisenbach*, 221 Ill. App. 3d at 443.

Plaintiff did identify an additional, specific source of his alleged clearly mandated public policy of "patient safety." The complaint alleged that section 3 of the Medical Patient Rights Act "recognizes Illinois public policy establishing '[t]he right of each patient to care consistent with sound nursing and medical practices.' " 410 ILCS 50/3 (West 2006). However, the mere citation of a constitutional or statutory provision in a complaint will not, by itself, be sufficient to state a cause of action for retaliatory discharge. Rather, an employee must show that the discharge violated the public policy that the cited provision clearly mandates. *Fellhauer*, 142 Ill. 2d at 505; *Barr*, 106 Ill. 2d at 527.

We do not read section 3 of the Medical Patients Rights Act to establish a clearly mandated public policy of patient safety that was violated by plaintiff's discharge. Section 3(a) of the Act establishes the following rights:

> "(a) The right of each patient to care consistent with sound nursing and medical practices, to be informed of the name of the physician responsible for coordinating his or her care, to receive information concerning his or her condition and proposed treatment, to refuse any treatment to the extent permitted by law, and to privacy and confiden-

tiality of records except as otherwise provided by law." 410 ILCS 50/3(a) (West 2006).

It is apparent that, as far as this section addresses medical record preparation at all, it is only concerned with record confidentiality, rather than record timeliness. This is understandable since the Hospital Licensing Act requires hospitals licensed in Illinois to develop a medical record for each of its patients as required by Department of Public Health rules. 210 ILCS 85/6.17(a) (West 2006). In turn, Department of Public Health rules require that patient medical records be "accurate, *timely* and complete." (Emphasis added.) 77 Ill. Adm. Code §250.1510(b)(2) (1996).

Finally, we observe that, before this court, plaintiff and supporting *amicus* make a passing reference to the Hospital Report Card Act (210 ILCS 86/1 *et seq.* (West 2006)). However, plaintiff did not include this statute as a source of the alleged clearly mandated public policy in the complaint or in his response to Memorial's motion to dismiss. Accordingly, plaintiff has forfeited any argument concerning this statute. See *Engstrom v. Provena Hospitals*, 353 Ill. App. 3d 646, 650 (2004); *Eisenbach*, 221 Ill. App. 3d at 443.

We agree with the appellate court's view of this case. Referring to *Palmateer*, the court observed that "for retaliatory discharge to reach the level of a violation of public policy, the 'matter must strike at the heart of a citizen's social rights, duties, and responsibilities.' " The appellate court then reasoned that plaintiff simply told the Joint Commission surveyor that Memorial's practice was to update patients' charts before the end of the employee's shift, instead of immediately updating patients' charts as the Joint Commission allegedly recommended. The court concluded: "Such action falls short of the supreme court's public-policy threshold articulated in *Palmateer*."

Presiding Justice Appleton wrote separately to state that "the limitations on the determination of what is 'public policy' are not only cumbersome but also so restrictive as to emasculate any common understanding of what we, as a society, expect." He further opined that it should be "the public policy of the State of Illinois for professional health-care providers to speak truthfully to State regulatory agencies concerning hospital practices involving—even tangentially—patient safety."

We agree with the appellate court special concurrence to the extent that the provision of good medical care by hospitals is in the public interest. "It does not follow, however, that all health care employees should be immune from the general at-will employment rule simply because they claim to be reporting on issues that they feel are detrimental to health care." *Wright v. Shriners Hospital for Crippled Children*, 412 Mass. 469, 474-75, 589 N.E.2d 1241, 1245 (1992). In a common law retaliatory discharge action, the requirement of a "clearly mandated public policy" is essential because, in its absence, a hospital retains the right to fire noncontractual employees at will. See *Palmateer*, 85 Ill. 2d at 130. Adherence to a narrow definition of public policy, as an element of a retaliatory discharge action, maintains the balance among the recognized interests. Employees will be secure in knowing that their jobs are safe if they exercise their rights according to a clear mandate of public policy. Employers will know that they may discharge their at-will employees for any or no reason unless they act contrary to public policy. Finally, the public interest in the furtherance of its public policies, the stability of employment, and the elimination of frivolous lawsuits is maintained. See *Fellhauer*, 142 Ill. 2d at 507, quoting *Palmateer*, 85 Ill. 2d at 133; *Pierce*, 84 N.J. at 73, 417 A.2d at 512.

Based on the narrow scope of a retaliatory discharge action, the general concept of "patient safety," by itself, is simply inadequate to justify finding an exception to the general rule of at-will employment. All we hold today is that plaintiff failed to sufficiently plead the existence of a clearly mandated public policy in this case. See *Gould v. Campbell's Ambulance Service, Inc.*, 111 Ill. 2d 54, 57-58 (1986) (concluding that relevant sources failed "to show the existence of a clearly mandated public policy").

### III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*