2023 IL App (1st) 221845

No. 1-22-1845

FIRST DISTRICT
SECOND DIVISION
June 20, 2023

| | | |
|---|---|---|
| STEVEN LEVINE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 L 5173 |
| | ) | |
| UL LLC, a Delaware Limited Liability Company, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald-Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Steven Levine, filed a one-count complaint in the circuit court of Cook County against defendant, UL LLC, a Delaware limited liability company (UL) for wrongful termination. UL filed a motion to dismiss the complaint for failure to state a cause of action. The circuit court of Cook County granted defendant's motion to dismiss with prejudice. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                  I. BACKGROUND

¶ 3     This appeal is from a judgment granting a motion to dismiss a complaint at the pleading stage of litigation. This fact, illuminated by the standard of review in such cases, leads us to take the pertinent facts necessary to resolve the appeal from plaintiff's complaint and accept those allegations as true.

¶ 4     Plaintiff served as UL's employee from September 2009 until October 19, 2021. During that time, plaintiff possessed a valid concealed carry license pursuant to the Firearm Concealed Carry Act (Act) (430 ILCS 66/1 *et seq.* (West 2020)). Defendant has an employee handbook and required plaintiff to review the handbook and sign an acknowledgment that plaintiff read and

understood the handbook. Defendant's employee handbook provides, in pertinent part, as follows:

> "While we cannot list every form of unacceptable behavior, here are some examples:

> * * *

> Carrying firearms, weapons, or dangerous substances at any time, on premises owned or occupied by UL, unless state law provides otherwise.

> Note: This prohibition applies only to the extent allowed by applicable state law. In those states that specifically give you the right to maintain a lawfully possessed firearm in a locked vehicle in our parking lot, you will be permitted to maintain a firearm in your own locked vehicle in compliance with the law. Under those circumstances, you are strictly prohibited from removing the firearm from your vehicle or carrying it on your person or into a building."

¶ 5    On September 9, 2021, plaintiff parked his personal vehicle on defendant's property in defendant's outdoor parking lot. On September 9, plaintiff had locked in his vehicle two pistols and ammunition. The manner in which plaintiff locked the guns and ammunition in his vehicle while he was at work complied with the requirements of the Act.

¶ 6    On September 9, 2021, burglars broke into plaintiff's vehicle and another vehicle in defendant's parking lot. The burglars stole plaintiff's two guns and ammunition. On October 19, 2021, defendant terminated plaintiff's employment. Defendant stated the reason for the termination was plaintiff's obstruction of defendant's investigation into the burglaries by not disclosing the handguns and ammunition to defendant's investigators after the burglary. Plaintiff alleges, in full, "this was merely pretextual, as the real reason [plaintiff] was terminated was

[defendant's] disapproval of [plaintiff] possessing the firearms in his vehicle in the first place."

Plaintiff's complaint alleges that plaintiff's termination violated public policy and Illinois law.

¶ 7    Plaintiff alleges that defendant terminated him in retaliation for plaintiff allegedly exercising his rights under the United States Constitution, the Illinois Constitution, and section 65(b) of the Act (*id.* §65(b)). Plaintiff alleges the purpose of section 65(b) is to facilitate the exercise of those alleged rights. Plaintiff alleges that section 65(b) of the Act evinces a "clear mandate of public policy" that persons have the right to store firearms when entering private property that has prohibited possessing concealed firearms on its property. Therefore, plaintiff alleges, defendant's act of terminating plaintiff's employment for storing his handguns and ammunition in his vehicle while parked in defendant's parking lot "violated a clear mandate of public policy."

¶ 8    On August 5, 2022, defendant filed a motion pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)) to dismiss plaintiff's complaint with prejudice. Defendant asserted that, after the burglary from the vehicles, it conducted an investigation into the break-ins. Defendant's motion repeated that defendant terminated plaintiff "for obstructing the Company's investigation of the theft by failing to disclose the missing firearms to [defendant's] investigators." Defendant asserted that plaintiff obstructed defendant's investigation by failing to disclose "the firearms—or their theft—to [defendant's] investigators."

¶ 9    Defendant argued that retaliatory discharge is a " 'limited and narrow exception' " to the rule that an employer may terminate an at-will employee for "no reason at all" and that the exception only applies if an "employer violates a 'clear mandate of public policy.' " Defendant argued that plaintiff failed to state a cognizable claim for retaliatory discharge under Illinois law because plaintiff's complaint fails to allege that plaintiff's termination "violates a 'clear mandate

of public policy.' " Defendant noted that to state a claim for retaliatory discharge requires a plaintiff to allege the discharge was in retaliation for activities and that the discharge violates a clear mandate of public policy. Defendant asserted that, where a plaintiff cites a statute to support a claim of retaliatory discharge, the question is "whether a public policy is clearly mandated" by the statute and, if so, whether the termination violated that clear public policy mandate. Defendant argued that our supreme court has a "narrow definition of public policy" for retaliatory discharge cases and that under this "narrow definition" plaintiff cannot prove any set of facts to bring his termination within the scope of the exception to the at-will employee termination rule.

¶ 10    Defendant argued that, in practice, Illinois courts have only recognized public policy exceptions to the rule for at-will employees "where (1) the discharge stems from asserting a worker's compensation claim or (2) the discharge is for 'whistleblowing.' " Defendant also argued that a public policy restricting the power of the government—rather than placing restrictions on private individuals—cannot form the basis of a retaliatory discharge by a private employer. In this case, defendant argued, the statute plaintiff relies on is a restriction on the power of government to punish certain behavior surrounding firearms but does not speak to "the parameters of a private employer's obligations with respect to its employee's possession of firearms." (Emphasis omitted.)

¶ 11    Regarding the provision in the Act permitting firearm licensees to keep firearms in their vehicles on property that has restricted the carrying of concealed firearms on their property, defendant argued that plaintiff read section 65(b) outside its "broader context and purpose." Defendant argued the statute, like the United States and Illinois Constitutions, evince a public policy regulating the government's ability to restrict the right to keep and bear arms; they do not

limit a private employer's ability to restrict its employees' ability to bring guns to work. Thus, defendant argued, even if plaintiff were correct and the reason given for his termination was pretextual, plaintiff's terminations "would not violate the very narrow 'clear mandate of public policy' requirement."

¶ 12    Defendant argued the

"clearly mandated public policy' exception to the rule on termination of at-will employees should not be expanded to conduct that does not violate the Act. Defendant also argued the scope of the public policy exception to at-will employment should be limited to "what has been recognized by the Illinois Supreme Court."

¶ 13    Furthermore, defendant argued that plaintiff only pled "conclusory allegations of alleged pretext which are insufficient to plead a claim for wrongful termination," also warranting dismissal for failure to state a claim. Defendant asserted that although plaintiff alleges that defendant's real reason for terminating plaintiff was its alleged "disapproval" of plaintiff's possession of firearms in his vehicle, plaintiff "alleges no facts to suggest that [defendant] was hostile to [plaintiff's] possession of guns." Defendant also argued that the complaint contains no factual allegations whatsoever substantiating the allegation that defendant's stated reason for terminating plaintiff was retaliation for plaintiff exercising his rights. Defendant argued (1) that plaintiff cannot use these conclusory allegations to state a claim in hopes that discovery will yield support for his speculation, (2) that plaintiff cannot cure these deficiencies through amendment, and (3) that, therefore, the complaint should be dismissed with prejudice.

¶ 14    On November 14, 2022, following full briefing by the parties, the trial court granted defendant's motion to dismiss with prejudice. The trial court noted that "actions for retaliatory discharge have generally been sustained only in two situations: 1) where the discharge stems

from exercising rights pursuant to the Workers' Compensation Act; or 2) where the discharge is for 'whistleblowing' activities, namely the reporting of illegal or improper conduct." The trial court found that the authorities stood for the proposition that merely referencing a constitutional or statutory provision in a complaint does not give rise to a retaliatory discharge cause of action. Instead, a review of the public policy underlying the enactment of the provision must reveal a clear indication that this right is intended to apply to the employer-employee relationship. The court found that the federal and state constitutions and the Act merely "provide protection from the government's restriction on plaintiff's right to keep and bear arms."

¶ 15    The court concluded:

> "Absent any specific legislation restricting an employer's right to infringe on an
>
> employee's right to keep and bear arms, the Court does not extend the [retaliatory
>
> discharge] cause of action beyond those judicially recognized, specifically discharge in
>
> retaliation for exercising rights under the workers' compensation act and for actions
>
> related to whistleblowing."

The court found plaintiff failed to plead any allegations that fall within those two exceptions to the at-will employment rule.

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    This appeal comes on a trial court judgment granting a motion to dismiss a complaint at the pleading stage of litigation. See 735 ILCS 5/2-615 (West 2020). The manner in which this court reviews such judgments is familiar:

> "We review *de novo* an order granting a motion to dismiss pursuant to
>
> section 2-615 of the Code and may affirm the trial court's dismissal for any

reason supported by the record. [Citation.] A section 2-615 motion to dismiss tests the legal sufficiency of a complaint, *i.e.*, whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted. [Citation.] When ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pled facts in the complaint and reasonable inferences drawn therefrom. [Citation.] We do not, however, take mere conclusions of law or fact contained within the challenged pleading as true unless they are supported by specific factual allegations. [Citation.]

> 'A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted.'
>
> [Citation.]" *Cretella v. Azcon, Inc.* 2022 IL App (1st) 211224, ¶ 11.

¶ 19    There is no question defendant was plaintiff's at-will employee who, except under certain circumstances, could be discharged for "any reason or no reason. [Citations.]" (Internal quotation marks omitted.) *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 500 (2009). One exception to this general rule "arises where there has been a retaliatory discharge of the employee." *Id.* In Illinois, the tort of retaliatory discharge is "limited and narrow." *Id.* "To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy. [Citations.]" *Id.*

¶ 20    Two elements are at play in this appeal: (1) whether plaintiff has pleaded sufficient facts to properly allege that plaintiff's termination was for plaintiff's activities and whether, if it was, that discharge violates a "clear mandate of public policy." Although the former is based on the allegations of fact in the complaint and the latter is based on the allegations of law in complaint, when reviewing a judgment granting a motion to dismiss pursuant to section 2-615 of the Code, both inquiries concern a question of law for this court that we review, without deference to the trial court, *de novo*. [1] [2] *Id.* at 499 ("A court reviews *de novo* an order granting a section 2-615 motion to dismiss."); see also *Mattis v. State Universities Retirement System*, 296 Ill. App. 3d 675, 682-83 (1998); *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1144 (2001) ("we will disregard mere conclusions of law").

¶ 21    If we determine that the Act evinces a clearly mandated public policy that private employers of at-will employees must permit concealed carry license holders to store firearms in their vehicles on the employer's property, then we must consider whether plaintiff's complaint alleges sufficient facts to state a cognizable claim that plaintiff's termination was in retaliation for plaintiff exercising that policy. We first address whether plaintiff has pleaded a "clearly mandated issue of public policy" because any judgment on the question of whether plaintiff sufficiently pleaded retaliation would be pointless if no clearly mandated public policy is implicated. The trial court has already expressed its belief that it cannot expand the "public policies" that can be pleaded in a retaliatory discharge complaint beyond rights under the

---

[1] Although, we are cognizant that our supreme court has noted that "the element of retaliation, which involves causation and motive, is factual in nature and generally more suitable for resolution by the trier of fact. [Citations.]" *Turner*, 233 Ill. 2d at 502.

Workers' Compensation Act or for whistleblowing. To properly resolve this appeal, the questions for this court are whether the tort of retaliatory discharge is limited to those two public policies or whether it may be expanded, within our supreme court's guidance, to include other public policies; and, whether section 65(b) of the Act evinces such a policy.

¶ 22    We find, for the reasons stated below, that (1) the tort of retaliatory discharge is not so "limited and narrow" that it may not encompass termination in retaliation for actions in accordance with other "clearly mandated public policies," specifically, those not yet recognized by this or our supreme court, (2) section 65(b) of the Act evinces a "clearly mandated public policy" for purposes of the tort of retaliatory discharge, and (3) plaintiff failed to plead facts to sufficiently allege that defendant terminated him in retaliation for his conduct in accord with the policy in section 65(b) of the Act but plaintiff should be afforded an opportunity to amend his complaint.

¶ 23                    A. Scope of Public Policy in Retaliatory Discharge

¶ 24    This court has found that, in practice, Illinois courts have found the public policy element to be met where (1) the discharge stems from asserting a worker's compensation claim or (2) the discharge is for "whistleblowing," *i.e.*, reporting of illegal or improper conduct. *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 626 (2005) (citing *Geary v. Telular Corp.*, 341 Ill. App. 3d 694, 701 (2003) (collecting cases)).[3] However, in *Turner*, our supreme court did not limit the scope of the meaning of "clearly mandated public policy" to only those implicating protections under the Workers' Compensation Act or for whistleblowing. See *Turner*, 233 Ill. 2d at 500-04. In fact, the *Turner* decision fails to ever mention the Workers' Compensation Act or

---

[3]This court recognized these findings in *Gonzales v. Garfield Park Conservatory Alliance*, 2020 IL App (1st) 190739-U, ¶ 19.

whistleblowing. See *id.* Instead, the court implicitly permits plaintiffs to at least attempt to show the expression of a "clearly mandated public policy" for purposes of the tort of retaliation in different statutes. See *id.* at 505.

¶ 25    The *Turner* court explained, however, that "the mere citation of a constitutional or statutory provision in a complaint will not, by itself, be sufficient to state a cause of action for retaliatory discharge. Rather, an employee must show that the discharge violated the public policy that the cited provision clearly mandates." *Id.* In expressing what "clearly mandates" means in this context, our supreme court explained that " 'clearly mandated public policy' implies that the policy will be recognizable simply because it is clear. 'An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations. [Citations.]' " *Id.* at 503 (quoting *Birthisel v. Tri-Cities Health Services Corp.*, 424 S.E.2d 606, 612 (W. Va. 1992)); accord *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 282 (Iowa 2000) (stating that requirement of "well-recognized and clear public policy" "helps ensure that employers have notice that their dismissal decisions will give rise to liability"). Examples of general expressions of public policy that do not suffice to give rise to a claim of retaliatory discharge, according to our supreme court, "include 'right to marry' a coworker [citation]; 'product safety' [citation]; 'promoting quality health care' [citation]; and 'the Hippocratic Oath' [citation]." *Turner*, 233 Ill. 2d at 503.

¶ 26    Moreover, our supreme court quoted favorably its earlier discussion of the meaning of "clearly mandated public policy" in *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130 (1981), as follows:

" 'There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. *It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions*. [Citation.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.' [Citation.]" *Turner*, 233 Ill. 2d at 500-01 (quoting *Palmateer*, 85 Ill. 2d at 130).

Additionally, the constitutional or statutory provision relied upon by the plaintiff must do more than limit the power of government. See *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 527 (1985) (rejecting argument that violation by "anyone" of provisions that are "limitations only on the power of government" is a violation of a clearly mandated public policy).

¶ 27     Based on the foregoing, we find that a "clearly mandated public policy," for purposes of the tort of retaliatory discharge, is not limited to policy arising from the Workers' Compensation Act or from whistleblower protections. Rather, a "clearly mandated public policy" may be found in any of the State's "constitution[,] statutes[,] and *** judicial decisions." (Internal quotation marks omitted.) *Turner*, 233 Ill. 2d at 500. To qualify as a "clearly mandated public policy" for purposes of the tort of retaliatory discharge, the alleged policy must not be limited to a restriction on government power but must, collectively not individually, "strike at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer*, 85 Ill. 2d at 130-31 ("The cause of action is allowed where the public policy is clear but is denied where it is equally clear that only private interests are at stake."). We must also examine the statutory provision to determine whether it

reflects the policy that the plaintiff alleges. See *Turner*, 233 Ill. 2d at 505-06 ("We do not read section 3 of the Medical Patients Rights Act to establish a clearly mandated public policy of patient safety that was violated by plaintiff's discharge. *** It is apparent that, as far as this section addresses medical record preparation at all, it is only concerned with record confidentiality, rather than record timeliness."). Finally, the discharge must violate the public policy clearly mandated by the statute. *Barr*, 106 Ill. 2d at 527; *Turner*, 233 Ill. 2d at 503 ("Unless the employee identifies a clear mandate of public policy that is violated by the employee's discharge, the complaint will not state a cause of action for retaliatory discharge.").

¶ 28    We turn now to an application of these principles to the policy allegedly espoused in section 65(b) of the Act.

¶ 29             B. Section 65(B) of the Act States a Clearly Mandated Public Policy

¶ 30    We find that section 65(b) of the Act evinces a clearly mandated public policy that may form the basis of a claim of retaliatory discharge. We find section 65(b) of the Act:

>    (1) espouses the policy for which plaintiff relies on it (*Turner*, 233 Ill. 2d at 505-06);

>    (2) is more than a restriction on the power of government to punish concealed carry license holders and does concern the relationship of private individuals, including employers and employees (*Barr*, 106 Ill. 2d at 527 (rejecting constitutional and statutory provisions limiting the power of government as indicators of public policy); *id.* at 528 (rejecting finding a clearly mandated public policy for purposes of a claim of retaliatory discharge where the provisions at issue "mandate nothing concerning the relationship of private

individuals, including private individuals in the employer-employee relationship"));

(3) provides specific guidance to employers that dismissal in retaliation for exercising the policy at issue may give rise to liability (*Turner*, 233 Ill. 2d at 503 (holding "generalized expressions of public policy fail to provide essential notice to employers")); and

(4) in this case, plaintiff's discharge violates that policy (*id.*).

¶ 31 Plaintiff argues that the public policy contained in section 65(b) of the Act is a policy to facilitate Illinois's citizens' rights to keep and bear arms and right to self-defense by enabling the rights of concealed carry license holders not to have to leave their firearms at home when visiting locations that have prohibited firearms or face criminal liability. Section 65(b) of the Act provides, in pertinent part, as follows:

"(a-10) The owner of private real property of any type may prohibit the carrying of concealed firearms on the property under his or her control. The owner must post a sign in accordance with subsection (d) of this Section indicating that firearms are prohibited on the property, unless the property is a private residence.

(b) Notwithstanding subsections (a), (a-5) [(not at issue here)], and (a-10) of this Section except under paragraph (22) or (23) of subsection (a) [(also not at issue)], any licensee prohibited from carrying a concealed firearm into the parking area of a prohibited location specified in subsection *** (a-10) of this Section shall be permitted to carry a concealed firearm on or about his or her person within a vehicle into the parking area and may store a firearm or ammunition

concealed in a case within a locked vehicle or locked container out of plain view within the vehicle in the parking area. A licensee may carry a concealed firearm in the immediate area surrounding his or her vehicle within a prohibited parking lot area only for the limited purpose of storing or retrieving a firearm within the vehicle's trunk. ***

*** 

(d) Signs stating that the carrying of firearms is prohibited shall be clearly and conspicuously posted at the entrance of a building, premises, or real property specified in this Section as a prohibited area, unless the building or premises is a private residence. Signs shall be of a uniform design as established by the [Illinois State Police] and shall be 4 inches by 6 inches in size. The [Illinois State Police] shall adopt rules for standardized signs to be used under this subsection." 430 ILCS 66/65 (West 2020).

¶ 32     We find that the purpose of section 65(b) of the Act is not merely to constrain the power of the government to prosecute concealed carry license holders for taking their firearms into the parking areas of prohibited property. "The public policy underlying a statutory or constitutional provision is found by examining the history, purpose, language and effect of the provision." *Barr*, 106 Ill. 2d at 527. "The basic intent of the legislature can be ascertained by examining the terminology of the statute, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the statute as a whole." *Costello v. Governing Board of Lee County Special Education Ass'n*, 252 Ill. App. 3d 547, 557 (1993); see also *Maracich v. Spears*, 570 U.S. 48 (2013) (construing structure of statute).

¶ 33    The Act does establish criminal culpability and punishment for a violation of its provisions. See 430 ILCS 66/70(e) (West 2020) ("Except as otherwise provided, a licensee in violation of this Act shall be guilty of a Class B misdemeanor. A second or subsequent violation is a Class A misdemeanor."). Nonetheless, section 65 of the Act makes no mention of prosecution under the Act. To find that the only purpose of section 65(b) is to restrain prosecution of license holders under section 70 would have to rely on the "except as otherwise provided" language in section 70 but nothing in section 65. Further, section 65(b), read as a whole, imposes an obligation on private property owners in relationship to the rights of concealed carry license holders, without mention of the power of government to enforce that obligation. *Id.* § 65(b). The statute does mandate something in the relationship between private individuals, including individuals in the employer-employee context. In that relationship, the Act mandates that employers who prohibit firearms on their property must post signs to that effect and permit concealed carry licensees to keep firearms in their vehicles in compliance with the statute.

¶ 34    We also find that the guidance provided by the statute is clear and specific. Section 65(b) is not a generalized expression of a public policy favoring concealed carry license holders. Section 65(b) provides clear direction to private property owners, including employers, and license holders, in a specific context. Under the statute, license holders know precisely how and when to secure their firearms, and employers know precisely what they must do under the public policy at issue or face liability for a discharge that violates that policy.

¶ 35    Moreover, the Act itself is found in the Public Safety chapter of the Illinois statutes. In addition to the Act (430 ILCS 66/1 *et seq.* (West 2020)), the Public Safety chapter of the Illinois statutes addresses such matters as hazardous substances (430 ILCS 35/1 *et seq.* (West 2020)),

poison prevention packaging (430 ILCS 40/1 *et seq.* (West 2020)), boiler and pressure vessel safety (430 ILCS 75/1 *et seq.* (West 2020)), and amusement ride and attraction safety (430 ILCS 85/2-1 *et seq.* (West 2020)). The placement of the Act in the chapter on Public Safety itself suggests its purpose is neither exclusively nor primarily related to the power of the government to prosecute concealed carry license holders or to revoke their licenses but that its purpose is related to the safety of the public with regard to a potentially dangerous implement. See *Costello*, 252 Ill. App. 3d at 557; *Maracich*, 570 U.S. 48. Section 65(b) provides—and its primary purpose appears to be—the creation and delineation of an exception to the right of private property owners to prohibit firearms on their property and that exception is in favor of concealed carry license holders. We find that the policy embodied in such an exception is to balance the rights of concealed carry owners to the fullest degree possible against the rights of private property owners. See *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 812 S.E.2d 527, 530-31 (Ga. Ct. App. 2018) (Dillard, C.J., specially concurring, joined by Ellington, J.) (finding that in a similar statute the Georgia General Assembly sought to balance these sacrosanct rights of property owners and to keep and bear arms); *Minnesota Police & Peace Officers Ass'n v. National Football League*, A15-0317, 2015 WL 4877998, at *3 n.6 (Minn. Ct. App. Aug. 17, 2015) ("The structure and text of subdivision 17 show the various policy considerations that the legislature weighed in determining the appropriate balance between permit holders' rights to carry and the rights of private-property owners.").

¶ 36    Furthermore, the policy at issue in section 65(b) goes beyond plaintiff's private interests. Examples of private interests for which the court has disallowed retaliatory discharge claims include

"a dispute over a company's internal management system (*Keneally v. Orgain*, [606 P.2d 127 (Mont. 1980)]), where the worker took too much sick leave (*Jones v. Keogh*, [409 A.2d 581 (Vt. 1979)]), where the worker tried to examine the company's books in his capacity as a shareholder (*Campbell v. Ford Industries, Inc.*, [546 P.2d 141 (Or. 1976)]), where the worker impugned the company's integrity (*Abrisz v. Pulley Freight Lines, Inc.*, [270 N.W.2d 454 (Iowa 1978)]), where the worker refused to be examined by a psychological-stress evaluator (*Larsen v. Motor Supply Co.*, [573 P.2d 907 (Ariz. Ct. App. 1977)]), where the worker was attending night school (*Scroghan v. Kraftco Corp.*, [551 S.W.2d 811 (Ky. Ct. App. 1977)]), or where the worker improperly used the employer's Christmas fund (*Jackson v. Minidoka Irrigation District*, [563 P.2d 54 (Idaho 1977)])." *Palmateer*, 85 Ill. 2d at 131.

This is not a case where the policy involves only a private interest where the policy implicates general societal rights concerning firearms and the rights of all private property owners. Further, our supreme court has recognized "[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens. See Ill. Const. 1970, Preamble; *Marbury v. Madison*, [5 U.S. (1 Cranch) 137, 163 (1803)." *Id.* at 132.

¶ 37    Finally, accepting the allegations of plaintiff's complaint as true, plaintiff's termination violated the policy espoused in section 65(b). Based on the allegations in the complaint, (1) the statute permitted plaintiff to secure his handguns in compliance with the statute in his vehicle, even while on defendant's parking lot, (2) the plaintiff secured his handguns in his vehicle in the parking lot, and (3) defendant terminated him because of it.

¶ 38    Accordingly, we find plaintiff can state a cause of action for retaliatory discharge based on section 65(b) of the Act.

¶ 39                    C. Plantiff Failed to Sufficiently Allege Retaliation

¶ 40    Our finding that plaintiff can state a cause of action for retaliatory discharge based on section 65(b) of the Act notwithstanding, we find that plaintiff failed to allege facts sufficient to state a claim that defendant terminated him in retaliation for storing his handguns in his vehicle in defendant's parking lot. We agree with defendant that plaintiff has pled no specific facts to support that claim but states it only as a conclusion. Plaintiff tacitly admits the defect by asking this court to remand so that plaintiff may conduct discovery on the issue.

¶ 41    When the trial court dismissed the complaint with prejudice, it did so with the erroneous belief that plaintiff could not state a legal claim for retaliatory discharge based on section 65(b) of the Act. Therefore, from the court's perspective, plaintiff could never state a cause of action for retaliatory discharge, even in an amended complaint.

> "A dismissal under section 2-615 of the Code should be made with prejudice only where it is clearly apparent that the plaintiffs can prove no set of facts entitling recovery. *** If a plaintiff can state a cause of action by amending his complaint, dismissal with prejudice should not be granted." (Internal quotation marks omitted.) *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210470, ¶ 81.

¶ 42    In this case, we have determined that section 65 implicates public policy, such that an employee who is discharged in retaliation for exercising rights based on section 65 can state a cause of action for retaliatory discharge. We are "unwilling to say that plaintiff[ ] would be unable to draft [his] complaint in such a way as to properly allege *** a cause of action." *Id.* We

note that before discovery plaintiff may allege supporting facts "on information and belief." This court has stated:

> "In some cases, certain relevant facts of a cause of action will not be known to the plaintiff. 'Where facts of necessity are within defendant's knowledge and not within plaintiff's knowledge, a complaint which is as complete as the nature of the case allows is sufficient.' [Citation.] At times, plaintiffs 'may be forced to present allegations of express authority upon information and belief.' [Citation.] ' "[A]n allegation made on information and belief is not equivalent to an allegation of relevant fact" [citation], but at the pleading stage a plaintiff will not have the benefit of discovery tools' to discern facts hidden from the plaintiff. [Citation.] The plaintiff *will* have knowledge of what he did to learn the facts that he alleges on information and belief, and should allege any efforts taken to discover those facts.' [Citation.]" (Emphasis in original.) *In re Estate of DiMatteo*, 2013 IL App (1st) 122948, ¶ 83.

¶ 43    We also note our supreme court's recognition that "the element of retaliation, which involves causation and motive, is factual in nature and generally more suitable for resolution by the trier of fact. [Citations.]" *Turner*, 233 Ill. 2d at 501 n.1. We find there is a set of facts on which plaintiff may be entitled to recover for retaliation but plaintiff has not pled them. Therefore, we find that the trial court properly granted defendant's motion to dismiss but erred in dismissing the complaint with prejudice.

¶ 44    For all of the foregoing reasons, the judgment of the circuit court, granting the motion to dismiss with prejudice, is affirmed in part and reversed in part. The judgment, to the extent it is based on failure to allege a "clearly mandated public policy," is reversed. The judgment granting

the motion to dismiss for failure to allege sufficient facts to state a claim that plaintiff's termination was in retaliation for acting under the public policy in section 65(b) of the Act is affirmed. However, to the extent the dismissal is with prejudice, it is reversed and the cause remanded with instructions to allow amendment of the complaint.

¶ 45                                   III. CONCLUSION

¶ 46     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded.

¶ 47     Affirmed in part and reversed in part.

¶ 48     Cause remanded.

*Levine v. UL LLC*, 2023 IL App (1st) 221845

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-5173; the Hon. Patrick J. Sherlock, Judge, presiding. |
| **Attorneys for Appellant:** | David G. Sigale, of Law Firm of David G. Sigale, P.C., of Wheaton, for appellant. |
| **Attorneys for Appellee:** | Sara Eber Fowler and Danielle M. Kays, of Seyfarth Shaw LLP, of Chicago, for appellee. |